UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
SHAKEIYA BURNETT, VANESSA MORALES,      :
JONATHAN MARMOLEJOS, RICHARD             :
SERPICA, and HENRY FOSTER, on behalf of  :
themselves and all others similarly situated,  :         **CASE NO.**
                                          :
                Plaintiffs,               :
                                          :         **CLASS AND**
        -against-                         :         **COLLECTIVE ACTION**
                                          :         **COMPLAINT**
WAHLBURGERS FRANCHISING LLC,              :
CONEY BURGERS LLC, BIG APPLE BURGERS LLC, :
WBDC HOSPITALITY LLC, MARK ANDREW         :
SINGER, JOHN CESTARE, and BEN NIASS,      :
                                          :
                Defendants.               :
-----------------------------------------------------------------------X

Plaintiffs Shakeiya Burnett, Vanessa Morales, Jonathan Marmolejos, Richard

Serpica, and Henry Foster ("plaintiffs"), on behalf of themselves and all others similarly

situated, by their attorneys Law Offices of Mitchell Schley, LLC and Pechman Law

Group PLLC, complaining of defendants Wahlburgers Franchising LLC, Coney Burgers

LLC, Big Apple Burgers LLC, WBDC Hospitality LLC, Mark Andrew Singer, John

Cestare, and Ben Niass (collectively, "defendants"), allege:

## NATURE OF THE ACTION

1.      Wahlburgers is a Boston based restaurant franchise founded in 2011 by

actors Mark and Donnie Wahlberg and their brother, celebrity chef Paul Wahlberg.

2.      Wahlburgers is also the name of the A&E reality series now in its sixth

season that follows the Wahlberg family as they operate and promote the restaurant

chain.

3.      The Wahlberg brothers pride themselves on taking an active role in

managing their locations and insuring that their restaurants meet their high standards

for customer and employee experience.   Indeed, the company's slogan is "Our family, our story, our burgers."

4.      For example, the Wahlburgers' website boasts that "[w]e are a working class organization, rooted at our family's kitchen table where the only star is the food and the music is laughter and stories.  We embrace loyalty, gratitude, excellence and community, sharing these values in our restaurants every day."

5.      John Cestare of Big Apple Burgers LLC signed a franchise deal to open Wahlburgers' franchises throughout New York City and Long Island.

6.      In September 2015, Wahlburgers opened its first New York City location in Coney Island, Brooklyn (hereafter referred to as "Wahlburgers in Coney Island").

7.      Since opening, Wahlburgers in Coney Island has been rampant with wage theft and violations of federal and state labor law.

8.      Wahlburgers in Coney Island maintained a pattern and practice of regularly shaving compensable time from the weekly hours of all its non-exempt employees, including servers, bartenders, bussers, and kitchen staff, and paying them for significantly fewer hours than they actually worked.

9.      As a result, Wahlburgers did not pay the non-exempt employees at the minimum wage rate for all hours worked and at overtime rates of one and one-half (1 ½) the regular hourly rate for all hours worked in excess of forty per week.

10.      Wahlburgers compensated the tipped employees at the "tipped" minimum wage rate of $7.50 per hour, without satisfying the strict requirements entitling defendants to apply a tip credit to the statutory full minimum wage rate.

11.      Beginning in June 2016, Wahlburgers regularly paid several tipped employees a flat weekly salary of $300.00, for all hours worked, including hours over forty.  This payroll scheme is an obvious and willful avoidance of Walburgers'

obligation to pay one and one-half (1 ½) times the regular hourly rate for all hours over forty, as required by the FLSA and NYLL.

12.     Wahlburgers regularly retained gratuities left by customers for tipped employees.

13.     Wahlburgers established and imposed an unlawful tip pool upon the tipped employees that required them to pay a share of their gratuities to non-tipped kitchen employees.

14.     Plaintiffs and other non-exempt tipped employees frequently complained to management of Wahlburgers in Coney Island about the missing gratuities to no avail.

15.     Wahlburgers failed to pay employees for attending mandatory meetings.

16.     Wahlburgers also failed to furnish all employees with annual wage notices, accurate and complete wage statements, failed to pay spread of hours pay, regularly made unlawful deductions from the tipped employees' wages for customer walkouts and other overhead expenses, and failed to maintain an accurate record keeping of hours worked, wages paid and tips paid to plaintiffs and those similarly situated.

17.     Defendants have systematically and repeatedly ignored the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL").  Plaintiffs seek relief against defendants' unlawful actions, compensation for unpaid minimum wage, overtime wages, misappropriated tips, spread-of-hours pay, liquidated damages, pre- and post-judgment interest, compensatory damages, and attorneys' fees and costs pursuant to the FLSA and NYLL.

## JURISDICTION

18.     This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over

plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

19.     Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391, as the Wahlburgers restaurant operated by defendants is located in the Eastern District of New York.

## THE PARTIES

**Plaintiffs**

20.     Shakeiya Burnett ("Burnett") resides in Brooklyn, New York.

21.     Burnett worked as a server at Wahlburgers in Coney Island from approximately March 2016, to August 1, 2016.

22.     Vanessa Morales ("Morales") resides in Brooklyn, New York.

23.     Morales worked as a server at Wahlburgers in Coney Island from approximately March 16, 2016, to August 6, 2016.

24.     Jonathan Marmolejos ("Marmolejos") resides in New York, New York.

25.     Marmolejos worked as a server/bartender at Wahlburgers in Coney Island from approximately December 10, 2015, to July 19, 2016.

26.     Richard Serpica ("Serpica") resides in Brooklyn, New York.

27.     Serpica worked as a bartender at Wahlburgers in Coney Island from approximately March 2016, to May 2016.

28.     Henry Foster ("Foster") resides in Queens, New York.

29.     Foster worked as a line cook at Wahlburgers in Coney Island from approximately January 2016, to April 2016.

30.     At all times relevant to this action, plaintiffs have been employees engaged in commerce or the production of goods for commerce on behalf of defendants.

31.     At all times relevant to this action, plaintiffs have been employees within the meaning of the FLSA and NYLL.

**Franchisor Defendant**

32.     Wahlburgers Franchising, LLC ("Franchisor Defendant") is a Massachusetts corporation with a principal place of business at 350 Lincoln Street, Suite 2501, Hingam, Massachusetts 02043.

33.     Wahlburgers Franchising, LLC grants franchises to operate Wahlburgers restaurants.

34.     Wahlburgers Franchising, LLC is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

35.     Wahlburgers Franchising, LLC has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

36.     Wahlburgers Franchising, LLC has an annual gross volume of sales in excess of $500,000.

37.     At all relevant time, Wahlburgers Franchising, LLC has been an employer of plaintiffs within the meaning of the FLSA and NYLL.

**Franchisee Corporate Defendants**

38.     Coney Burgers, LLC ("Coney Burgers") is a New York corporation with a principal place of business at 3015 Stillwell Avenue, Brooklyn, New York 11224.

39.     Coney Burgers is a franchisee of Wahlburgers Franchising, LLC or related company and owns and operates Wahlburgers located at 3015 Stillwell Avenue, Brooklyn, New York 11224.

40.     Coney Burgers is an "enterprise engaged in commerce" within the meaning of the FLSA.

5

41.     Coney Burgers has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;

42.     Coney Burgers has an annual gross volume of sales in excess of $500,000.

43.     Big Apple Burgers, LLC ("Big Apple") is a New York corporation with a principal place of business at 77 Bayview Avenue West, Lindenhurst, New York 11757.

44.     Big Apple is a franchisee of Wahlburgers Franchising, LLC or related company, and owns and operates Wahlburgers located at 3015 Stillwell Avenue, Brooklyn, NY 11224.

45.     Big Apple is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

46.     Big Apple has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;

47.     Big Apple has an annual gross volume of sales in excess of $500,000.

48.     WBDC Hospitality, LLC ("WBDC") is a Delaware corporation with a principal place of business at 280 Elm Street, Southampton, New York 11968.

49.     WBDC is a franchisee of Wahlburgers Franchising, LLC or related company and owns and operates Wahlburgers located at 3015 Stillwell Avenue, Brooklyn, NY 11224.

50.     WBDC is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

51.     WBDC has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

6

52.     WBDC has an annual gross volume of sales in excess of $500,000.

53.     Coney Burgers, Big Apple and WBDC are referred to herein as Franchisee Corporate Defendants.

54.     At all relevant times, the Franchisee Corporate Defendants have been employers of plaintiffs within the meaning of the FLSA and NYLL.

**Franchisee Individual Defendants**

55.     Defendant Mark Andrew Singer ("Singer") is an individual engaging in business in this district during the relevant period.  Singer is sued individually in his capacity as an owner, officer and/or agent of Coney Burgers, Big Apple Burgers and/or WBDC Hospitality .

56.     Singer possesses or possessed operational control and policy making authority, an ownership interest, or control of significant functions of Coney Burgers, Big Apple Burgers and/or WBDC Hospitality.

57.     Singer has authority to hire and fire employees, establish pay practices and scheduling, control labor relations and personnel policies, determine terms and conditions of employment and maintain employment records.

58.     Singer regularly takes part in employee meetings where restaurant policies and practices are discussed.

59.     Singer is personally and jointly and severally liable for the violations of the FLSA and NYLL by Coney Burgers, Big Apple Burgers  and/or WBDC Hospitality.

60.     Defendant John Cestare ("Cestare") is an individual engaging in business in this district during the relevant period.  Cestare is sued individually in his capacity as an owner, officer and/or agent of Coney Burgers, Big Apple Burgers  and/or WBDC Hospitality.

7

61.    Cestare possesses or possessed operational control and policy making authority, an ownership interest, or control of significant functions of Coney Burgers, Big Apple Burgers and/or WBDC Hospitality.

62.    Cestare has authority to hire and fire employees, establish pay practices and scheduling, control labor relations and personnel policies, determine terms and conditions of employment and maintain employment records.

63.    Cestare is personally and jointly and severally liable for the violations of the FLSA and NYLL by Coney Burgers, Big Apple Burgers and/or WBDC Hospitality.

64.    Defendant Ben Niass ("Niass") is an individual engaging in business in this district during the relevant period.  Niass is sued individually in his capacity as an owner, officer and/or agent of Coney Burgers, Big Apple Burgers and/or WBDC Hospitality.

65.    Niass possesses or possessed operational control and policy making authority, an ownership interest, or control of significant functions of Coney Burgers, Big Apple Burgers and/or WBDC Hospitality.

66.    Niass has authority to hire and fire employees, establish pay practices and scheduling, control labor relations and personnel policies, determine terms and conditions of employment and maintain employment records.

67.    Niass is responsible for employee scheduling and regularly participates in employee meetings where restaurant policies and practices are discussed
Niass is personally and jointly and severally liable for the violations of the FLSA and NYLL by Coney Burgers, Big Apple Burgers LLC and/or WBDC Hospitality LLC.

8

**Defendants Are Joint Employers of Plaintiffs**

68.     At relevant times, and as a matter of economic reality, defendants were employers and/or joint employers of plaintiffs and similarly situated employees within the meaning of the FLSA and NYLL.

69.     Facts that demonstrate that defendants were plaintiffs' employers include:

   a.  Defendants all suffered or permitted plaintiffs and similarly situated employees to work.

   b.  Each of the defendants acted directly or indirectly in the interest of one another in relation to plaintiffs and similarly situated employees.

   c.  Defendants each have an economic interest in Wahlburgers in Coney Island in which plaintiffs and similarly situated employees work.

   d.  Defendants all simultaneously benefitted from plaintiffs' work.

   e.  Defendants each had either functional and/or formal control over terms and conditions of work of plaintiffs and similarly situated employees.

   f.  Plaintiffs and similarly situated employees performed work integral to each defendant's operation.

70.     Franchisor Defendant significantly controls the day-to-day operations of Wahlburgers in Coney Island and its employees, including plaintiffs.

71.     Franchisor Defendant runs a restaurant business dependent on its franchise restaurants operating under a prescribed model, and plaintiffs work within this model was integral to its operation.

72.     Indeed, Rick Vanzura, CEO of Wahlburgers, has stated in the press that, "[w]e have spent the last two years carefully developing a successful and repeatable restaurant with our Hingham [Massachusetts] location, and we are now ready to begin expanding the business and the brand."

9

73.     Franchisor Defendant maintains control over all significant aspects of the Wahlburgers' operation, including management and compensation of employees.

74.     Indeed, in the months before the opening of Wahlburgers in Coney Island, several corporate representatives were present in the restaurant to train the employees and prepare the restaurant for its opening.

75.     Franchisor Defendant was involved in the recruitment and hiring of employees at Wahlburgers in Coney Island including for example, General Manager, Tasneem Tahir.

76.     The Franchisor Defendant and Franchisee Defendants have a common website, wahlburgersrestaurant.com, where the opening of the Coney Island location was announced.

77.     The common website announces additions to the menus of its franchise locations, including the Coney Island location.

78.     Representatives from Franchisor Defendants regularly visited Wahlburgers in Coney Island.   This included Norm MacLennan, Vice President of Operations, John Rogan, Director of Operations and Training, and Katee Trinkle, Manager of Training.

79.     During these visits, among other things, the representative would supervise plaintiffs' work, check the cleanliness of the restaurant, check the temperature of the ingredients, check inventory, ensure that equipment was in order and direct the manager to make changes if need be.

80.     Franchisor Defendant required that Franchisee Defendants comply with the prescribed model, which promotes a uniform method of operating its restaurant.

81.     Franchisor Defendant required Wahlburgers in Coney Island's employees to be adequately trained in the operation of the restaurant, so that employees could

carry out the operations of Franchisor Defendant in accordance with the prescribed model.

82. Selected employees were required to undergo training at Wahlburgers headquarters in Boston, Massachusetts.

83. For example, in February 2016, plaintiff Foster went to Wahlburgers corporate headquarters in Boston for two days to train to become a Wahlburgers certified trainer.

84. Following the completion of the Wahlburgers Trainer Certification program, plaintiff Foster received a certificate signed by Director of Training, John Rogan; Manager of Training, Katee Trinkle; Training Coordinator, Rebecca Lille; and General Manager of Wahlburgers in Coney Island, Tasneem Tahir.

85. Franchisor Defendant maintained bookkeeping records with respect to operation of Wahlburgers in Coney Island as part of the Franchisor Defendant's records.

86. Franchisor Defendant had the right to inspect records, including bookkeeping records and payroll records, of the operation of Wahlburgers in Coney Island.

87. Franchisor Defendant required Wahlburgers in Coney Island to provide it with a weekly report regarding its operations.

88. Franchisor Defendant required Wahlburgers in Coney Island to use a unified computer software program.

89. Franchisor Defendant maintained constant surveillance of and access to Wahlburgers in Coney Island operations through the computer software program.

90.     Franchisor Defendant had the right to require Wahlburgers in Coney Island to prepare or furnish any required reports using Wahlburgers' computers, cash register equipment, point of sale equipment, or other types of equipment.

91.     Franchisor Defendant had the right to enter Wahlburgers in Coney Island to conduct audits.

92.     Franchisor Defendant required Wahlburgers in Coney Island's employees to wear only the apparel approved by it while working.

93.     Franchisor Defendant required Wahlburgers in Coney Island to follow precise recipes and purchase specific ingredients from designated food suppliers.

94.     Franchisee Defendants could not modify, alter, remodel or add to the restaurant without approval from Franchisor Defendant.

95.     Franchisor Defendant required Wahlburgers in Coney Island to sell certain products in a standardized container or special packaging bearing Franchisor Defendant's trademark.

96.     All advertising and displays by Wahlburgers in Coney Island required the Franchisor Defendant's approval.

**COLLECTIVE ACTION ALLEGATIONS**

97.     Plaintiffs bring the First and Third claims against defendants as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all other similarly situated current and former non-exempt employees of Wahlburgers in Coney Island including servers, bartenders, greeters, cashiers, bussers, line cooks, preparation cooks, runners, expeditors, dishwashers and porters employed by defendants at Wahlburgers Coney Island at any time three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective").

98.    The FLSA Collective consists of approximately one hundred similarly situated current and former non-exempt employees of Wahlburgers, who have been victims of defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum wage, overtime pay, tips and other monies.

99.    As part of their regular business practices, defendants have intentionally, willfully, repeatedly, and in bad faith harmed plaintiffs and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA and NYLL.  This policy and pattern or practice includes, *inter alia*, the following:

    a.   failing to pay the FLSA Collective minimum wage for all hours worked;

    b.   failing to pay the FLSA Collective, including plaintiffs and all non-exempt employees the proper overtime pay for all hours worked over forty per week;

    c.   deducting from the tipped employees wages for customer walkouts;

    d.   failing to provide the tipped employees with adequate tip credit notice under the FLSA and NYLL;

    e.   denying the tipped employees the tips that they earned;

    f.   redistributing portions of the tips earned by the tipped employees to non-tipped employees, who were not entitled to tips under the FLSA;

    g.   requiring the FLSA Collective to perform off-the-clock work; and

    h.   failing to keep accurate records of hours worked by the FLSA Collective as required by the FLSA and the NYLL.

100.    Defendants have engaged in this unlawful conduct pursuant to a policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

101.    Defendants' unlawful conduct has been intentional, willfull, in bad faith, and has caused significant damage to plaintiffs and the FLSA Collective.

102.    The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to defendants, are readily identifiable by defendants, and are locatable through defendants' records, which defendants are required to maintain pursuant to the FLSA and NYLL.   These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

103.    Plaintiffs bring the Second and Fourth through Eighth Claims as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class consisting of themselves and all current and former non-exempt employees of Wahlburgers in Coney Island including but not limited to servers, bartenders, greeters, cashiers, bussers, line cooks, preparation cooks, runners, expeditors, dishwashers and porters, at any time six years prior to the filing of this action through the entry of judgment in this action (the "New York Rule 23 Class").

104.    The persons in the Rule 23 Class are so numerous that joinder of all members is impracticable.  The exact number of the New York Rule 23 Class members is unknown to plaintiff at this time, but there are believed to be 100 such persons.

105.    The identity of the New York Rule 23 Class members is known to the defendants and is contained in the employment records that the defendants are required to create and maintain pursuant to state and federal law.

106.    Common questions of law and fact exist as to all members of the New York Rule 23 Class that predominate over any questions affecting solely individual members.  Among the questions of law and fact common to the New York Rule 23 Class are:

14

    a.  whether defendants failed to pay the New York Rule 23 Class minimum wage for each hour worked;

    b.  whether defendants failed to pay the New York Rule 23 Class overtime at a rate of one and one half times their regular hourly rate for all hours worked over 40 in a workweek in violation of the NYLL;

    c.  whether defendants misappropriated and illegally retained tips and gratuities that were intended for and earned by servers, bartenders, bussers, runners, expeditors (the "tipped employees");

    d.  whether defendants failed to furnish the New York Rule 23 Class with an accurate statement of all wages, hours worked, rates paid, and gross wages as required by the NYLL and the supporting regulations;

    e.  whether defendants failed to furnish the New York Rule 23 Class with wage notices;

    f.  whether defendants failed to keep true an accurate gratuities record for all hours/shifts worked by the New York Rule 23 Class, and other records required by the NYLL;

    g.  whether defendants deducted from the tipped employees' wages for customer walkouts; and

    h.  whether defendants required the New York Rule 23 Class to perform off-the-clock work.

107.    The claims of the plaintiffs are typical of the claims of the New York Rule 23 Class they seek to represent.  Plaintiffs and the members of the New York Rule 23 Class work or have worked for defendants within the six years prior to the filing of this action.  They enjoy the same statutory rights under the NYLL to be paid at the correct minimum wage and overtime wage for all hours worked and to keep the gratuities they earn.  Plaintiffs and the members of the New York Rule 23 Class have sustained similar types of damages as a result of defendants' failure to comply with the NYLL.

108.    Plaintiffs and the New York Rule 23 Class have all been injured in that they have been under-compensated due to defendants' common policies, practices, and patterns of conduct.

109.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the New York Rule 23 Class.

110.    Plaintiffs have retained counsel competent and experienced in wage and hour litigation and class action litigation.

111.    There is no conflict between plaintiffs and the New York Rule 23 Class members.

112.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the New York Rule 23 Class have been damaged and are entitled to recovery as a result of defendants' common policies, practices, and procedures.  Although the relative damages suffered by the individual class members are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of defendants' compensation practices and to prosecute vigorously a lawsuit against defendants to recover such damages.  In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about defendants' practices.

113.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

114.    Wahlburgers in Coney Island opened to the public for business on or about September 1, 2015.

115.    Wahlburgers in Coney Island is situated in a large 6,000 square foot space and offers a fast service restaurant on the first floor with seating for 100 customers, and table service dining with a bar on the upstairs level with seating for 200 customers.

16

116. The franchise is reported to open seven more locations in New York. The Times Square location is currently under construction.

117. Wahlburgers in Coney Island is usually staffed with approximately 75 non-exempt employees, including servers, bartenders, greeters, cashiers, bussers, line cooks, preparation cooks, runners, expeditors, dishwashers, and porters.

**Shakeiya Burnett**

118. Defendants failed to pay Burnett the proper minimum wage, overtime wage, and spread-of-hours for all of the time she was suffered or permitted to work each workweek.

119. From the commencement of her employment in March 1, 2016, to in or about May 2016, Burnett was paid the New York tipped minimum wage rate of $7.50 per hour for all hours worked.

120. Although defendants paid Burnett at the New York tipped minimum wage, defendants did not provide Burnett with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to her wages.

121. Beginning in June 2016 through to the end of her employment, defendants intermittently changed Burnett's pay rate from an hourly rate to a flat weekly salary of $300 for all hours worked, including those over forty.

122. From the commencement of Burnett's employment in or around March 1, 2016 to in or around April 2016, Burnett regularly worked from 12:00 p.m. to 10:00 p.m., five days per week, for approximately fifty hours per week.

123. From in or about May 2016 to August 1, 2016, Burnett regularly worked approximately from 10:00 a.m. to 8:00 p.m., 5 days per week, for approximately 50 hours per week.

124.    Although Burnett regularly worked more than forty hours in a workweek, she was not paid overtime pay at 1 ½ times her regular hourly rate of pay.

125.    Burnett frequently worked more than ten hours in a day.

126.    Defendants failed to pay Burnett spread of hours pay.

127.    Defendants regularly made deductions from Burnetts' paychecks for customer walkouts.

128.    Defendants deducted $42.00 from Burnett's paycheck for the cost of her uniform, which brought Burnett's weekly wage below the required minimum wage, in violation of the NYLL.

129.    Burnett was frequently required to work eight or more hours without being given a break or a meal period.

130.    Defendants failed to furnish Burnett a wage notice at the time of her hire.

131.    Defendants failed to furnish Burnett with accurate statements of wages, hours worked, rates paid, and the claims tip allowance at the end of each pay period.

132.    Burnett was frequently given a pay check with no accompanying statement to indicate hourly rates, number of regular hours worked, overtime hours worked and the tax and other deductions taken from gross pay.

133.    On other occasions, defendants completely failed to pay Burnett and other non-exempt employees their weekly wages.

134.    For example, Burnett received no wages for the weeks of June 13 and June 20, 2016.

135.    Defendants failed to pay Burnett any wages for orientation and training of about three days at the beginning of her employment.

**Vanessa Morales**

136.    Defendants failed to pay Morales the proper minimum wage, overtime wage, and spread-of-hours for all of the time she was suffered or permitted to work each workweek.

137.    From the commencement of her employment on March 1, 2016, to in or about May 2016, Morales was paid the New York tipped minimum wage rate of $7.50 per hour for all hours worked.

138.    Although defendants paid Morales at the New York tipped minimum wage, defendants did not provide Morales with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to  apply a tip credit to her wages.

139.    Beginning in June 2016 through to the end of her employment, defendants intermittently changed Morales's pay rate from an hourly rate to a flat weekly salary of $300 for all hours worked, including those over forty.

140.    Although Morales regularly worked more than forty hours in a workweek, she was not paid overtime pay at 1 ½ times her regular hourly rate of pay.

141.    Morales worked an irregular schedule that varied from week to week, but she regularly worked between four and six days per week and more than forty hours per week.

142.    For example, for the week of July 4, 2016, Morales worked six days, one day from 8:00 a.m. to 10:30 p.m., one day from 5:00 p.m. to 1:00 a.m., one day from 11:00 a.m. to 11:00 p.m., one day from 12:00 p.m. to 8:00 p.m., one day from 12:00 a.m. to 12:00 p.m., for approximately fifty-four and one-half hours.

143.    Morales frequently worked in excess of ten hours in a day.

144.   For example, on August 4, 2016, Morales worked 15 hours and 40 minutes, from 11:00 a.m. to 2:40 a.m., without a break or meal period.

145.   Defendants failed to pay Morales spread-of-hours pay.

146.   Defendants regularly made deductions from Morales's paychecks for customer walkouts.

147.   Defendants deducted $40.95 from Morales' paycheck for the cost of her uniform, which brought Morales' weekly wage below the required minimum wage, in violation of the NYLL.

148.   Morales was frequently required to work eight or more hours without being given a break or a meal period.

149.   Defendants failed to furnish Morales wage notices when she was hired.

150.   Defendants failed to furnish Morales with accurate statements of wages, hours worked, rates paid, and the claims tip allowance.

151.   Morales was frequently given a pay check with no accompanying statement to indicate hourly rates, number of regular hours worked, overtime hours worked and the tax and other deductions taken from gross pay.

152.   Defendants failed to pay Morales any wages for orientation and training of about three days at the beginning of her employment.

**Jonathan Marmolejos**

153.    Defendants failed to pay Marmolejos the proper minimum wage, overtime wage, and spread-of-hours for all of the time he was suffered or permitted to work each workweek.

154.   From the commencement of his employment in December 2015 to in or about May 2016, Marmolejos was paid the New York tipped minimum wage rate of $7.50 per hour for all hours worked.

20

155.   Although defendants paid Marmolejos at the tipped minimum wage, defendants did not provide Marmolejos with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his wages.

156.   Throughout his employment, Marmolejos regularly worked from 11:00 a.m. to 10:00 p.m., six days a week, for approximately sixty-six hours per week.

157.   Although Marmolejos regularly worked more than forty hours in a workweek, he was not paid overtime at 1 ½ times his regular hourly rate of pay.

158.   Marmolejos frequently worked in excess of ten hours in a day.

159.   Defendants failed to pay Marmolejos spread of hours pay.

160.   Marmolejos was frequently required to work eight or more hours without being given a break or a meal period.

161.   Defendants failed to furnish Marmolejos wage notices when he was hired.

162.   Defendants failed to furnish Marmolejos with accurate statements of wages, hours worked, rates paid, and the claimed tip allowance at the end of each pay period.

163.   Marmolejos was frequently given a pay check with no accompanying statement to indicate hourly rates, number of regular hours worked, overtime hours worked and the tax and other deductions taken from gross pay.

**Richard Serpica**

164.   Defendants failed to pay Serpica the proper minimum and overtime wages, and spread-of-hours pay for all of the time he was suffered or permitted to work each workweek.

165.   Throughout his employment, Serpica was paid the New York tipped minimum wage rate of $7.50 per hour, plus tips.

21

166.    Although defendants paid Serpica at the tipped minimum wage, defendants did not provide Serpica with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his wages.

167.    For the first two weeks of his employment, Serpica regularly worked from 10:00 a.m. to 10:00 p.m., for 5 days per week, for approximately sixty hours per week.

168.    From in or about mid-March 2016 to May 2016, Serpica regularly worked from 12:00 p.m. to 10:00 p.m. 5 days per week, for approximately fifty hours per week.

169.    Although Serpica regularly worked more than forty hours in a workweek, he was not paid overtime at 1 ½ times his regular hourly rate of pay.

170.    Serpica frequently worked in excess of ten hours in a day.

171.    Defendants failed to pay Serpica spread-of-hours pay.

172.    Serpica was frequently required to work eight or more hours without being given a break or a meal period.

173.    Defendants failed to furnish Serpica wage notices when he was hired.

174.    Defendants failed to furnish Serpica with accurate statements of wages, hours worked, rates paid, and the claimed tip allowance at the end of each pay period.

175.    Serpica was frequently given a pay check with no accompanying statement to indicate hourly rates, number of regular hours worked, overtime hours worked and the tax and other deductions taken from gross pay.

**Henry Foster**

176.    Defendants failed to pay Foster proper overtime wages and spread-of-hours pay for all of the time he was suffered or permitted to work each workweek.

177.    Throughout his employment, Foster was paid $12.50 per hour.

178.    Beginning in February 2016, defendants did not pay Foster overtime at 1 ½ times his regular hourly rate of pay for hours in excess of forty per week.

179.    Foster regularly worked from 10:00 a.m. to 10:00 p.m., 5 days per week, for approximately sixty hours per week.

180.    Foster frequently worked in excess of ten hours in a day.

181.    Defendants failed to pay Foster spread-of-hours pay.

182.    Foster was frequently required to work eight or more hours without being given a break or a meal period.

183.    Defendants failed to furnish Foster wage notices when he was hired.

184.    Defendants failed to furnish Foster with accurate statements of wages, hours worked, rates paid, and the claims tip allowance.

185.    Foster was frequently given a pay check with no accompanying statement to indicate hourly rates, number of regular hours worked, overtime hours worked and the tax and other deductions taken from gross pay.

## WAHLBURGERS MISAPPROPRIATION OF GRATUITIES

186.    At any given time, Wahlburgers in Coney Island employed approximately twenty-five servers, bussers, bartenders, and runners, who fall under the category of "tipped employees" pursuant to 29 U.S.C. § 203(t).

187.    Defendants regularly misappropriated gratuities left by customers for tipped employees.

188.    For example, in or about March 2016, Donnie Wahlberg arranged a private event at the restaurant for the cast and crew of Blue Bloods, the CBS TV series he stars in. The party ran from 4:00 p.m. to 1:00 a.m.

189.    Plaintiffs were informed that they had earned $3,000 in gratuities during the party, however, that amount was never distributed to the tipped employees that worked that event.

190.    Defendants' skimming of the gratuities violates Section 196(d) of the NYLL, which provides that an employer cannot accept "any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

191.    Plaintiffs and other non-exempt tipped employees frequently complained to management during employee meetings about the missing gratuities but to no avail.

192.    Indeed, following a party at the restaurant on August 4, 2016, plaintiff Morales reported to Donnie Wahlberg that there was a lot going on at the restaurant that he needed to know about.  Donnie Wahlburg replied "I know."

193.    Defendants also required the tipped employees to share gratuities received from customers during private parties with kitchen staff employees who are not entitled to tips under the FLSA and/or the NYLL.

194.    For example, during a party held for the New York City Firefighters in or around June 2016, plaintiffs and the other tipped employees were required to tip $10 each to the kitchen staff employees.

195.    Because defendants unlawfully retained a portion of plaintiff and the other tipped employees' gratuities and required them to share their gratuities with non-tipped employees, they were not entitled to reduce the minimum wages of plaintiffs and the other tipped employees at the restaurant by applying the tip credit allowance that is available under the FLSA and the NYLL.

## WALHBURGERS TIME SHAVING AND
## FAILURE TO PAY FOR OFF THE CLOCK WORK

196.    Defendants regularly shaved approximately five to ten hours of compensable time from plaintiffs' and the other non-exempt employees' hours each week.

197.    For example, defendants often "punched" plaintiffs and the other non-exempt employees out of the time keeping system for meal periods that they did not take.

198.    For example, on August 4, 2016, plaintiff Morales arrived to work at 11:00 a.m. but forgot to punch-in until 11:20 a.m. She asked Usman, a manager, to adjust her punch-in to reflect 11:00 a.m. Instead Usman, adjusted her punch-in to 12:00 p.m. When confronted by Morales, Usman claimed that the adjustment was to reflect a meal period, and did not change the punch-in time when Morales informed him that she did not take a meal break that day.

199.    Defendants regularly instructed plaintiffs and the other non-exempt employees to work without punching-in.

200.    For example, plaintiff Serpica was frequently instructed by defendant Ben Niass to work without punching-in to the time keeping system. Niass told Serpica that he would make it up to him by allowing Serpica to work at the Wahlburgers' new location in Times Square.

201.    Plaintiffs and the other non-exempt employees were also required to attend mandatory employee meetings at the restaurant that lasted between one and three hours without compensation.

202.    For example, one meeting was on held August 1, 2016 and lasted over one hour.   A representative from Walburgers' Corporate Department attended this meeting, as well as individual defendants Mark Singer and Ben Niass.

### FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Minimum Wage)

203.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

204.    Defendants were required to pay to plaintiffs and the FLSA Collective the applicable federal minimum wage rate.

205.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because:

   a.    defendants were required to, but failed to, inform plaintiffs and the FLSA Collective of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m);

   b.    defendants imposed an unlawful tip pool on plaintiffs and the FLSA Collective, requiring them to share tips with  non-tipped employees; and

   c.    defendants misappropriated gratuities received from clients from private events.

206.    Defendants failed to pay plaintiffs and the FLSA Collective the minimum wages to which they are entitled under the FLSA.

207.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of plaintiffs and the FLSA Collective.

208.    Defendants' violations of the FLSA described above have been willful and, therefore, a three year statute of limitations applies to this matter pursuant   to the FLSA, 29 U.S.C. § 255(a).

209.   As a result of defendants' willful violations of the FLSA, plaintiffs and the FLSA Collective suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (New York Labor Law – Unpaid Minimum Wage)

210.   Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

Defendants were not eligible to avail themselves of the tipped minimum wage rate under the NYLL because, defendants were required to, but failed to, inform plaintiffs and the tipped employees of the tip credit provisions of the NYLL and supporting New York State regulations.

211.   Defendants failed to pay plaintiffs and the other non-exempt employees the minimum hourly wages to which they are entitled under the NYLL.

212.   Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs and the other non-exempt employees minimum hourly wages.

213.   As a result of defendants' violations of the NYLL, plaintiffs and the other non-exempt employees are entitled to recover their unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre-judgment and post-judgment interest.

## THIRD CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

214.   Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

215.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed plaintiffs.

216.    Defendants were required to pay plaintiffs one and one-half (1½) times the regular rate of pay for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq*.

217.    Defendants failed to pay plaintiffs the overtime wages to which they were entitled under the FLSA.

218.    Defendants willfully violated the FLSA by knowingly and intentionally failing to pay plaintiffs overtime wages.

219.    Defendants' violations of the FLSA described above have been willful and, therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

220.    Due to defendants' violations of the FLSA, plaintiffs are entitled to recover theirunpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### FOURTH CLAIM
### (New York Labor Law – Unpaid Overtime)

221.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

222.    Under the NYLL and supporting New York State Department of Labor Regulations, defendants were required to pay plaintiffs and the other non-exempt employees one and one half (1 ½) times the regular rate of pay for all hours they worked in excess of forty.

223.    Defendants failed to pay plaintiffs and the other non-exempt employees the overtime wages to which they were entitled under the NYLL.

224.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs and the other non-exempt employees overtime wages.

225.    Due to defendants' willful violations of the NYLL, plaintiffs and the other non-exempt employees are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre-judgment and post-judgment interest.

### FIFTH CLAIM
### (New York Labor Law – Wage Theft Prevention Act)

226.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

227.    Defendants violated NYLL § 195(1) by failing to furnish plaintiffs and the other non-exempt employees, at the time of hiring and on or before February 1st of each subsequent year of employment, with a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

228.    Due to defendants' violation of NYLL § 195(1), plaintiffs and the other non-exempt employees are entitled to recover from defendants liquidated damages of $50.00 per workweek that the violation occurred, up to a maximum of $2,500, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

229.    Defendants violated NYLL § 195(3) by failing to furnish plaintiffs and the other non-exempt employees with each payment of wages an accurate statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

230.    Due to defendants' violation of NYLL § 195(3), plaintiffs and the other non-exempt employees are entitled to recover from the defendants liquidated damages of $100 per workweek that the violation occurred, up to a maximum of $2,500, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## SIXTH CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

231.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

232.    Defendants have willfully failed to pay plaintiffs and the other non-exempt employees additional compensation of one hour's pay at the minimum hourly wage rate for each day during which they worked more than ten hours.

233.    As a result of defendants' failure to pay plaintiffs and the other non-exempt employees spread-of-hours pay, defendants have willfully violated the NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to the Hospitality Industry Wage Order, 12 N.Y.C.R.R. §§ 146-1.6.

## SEVENTH CLAIM
### (New York Labor Law – Misappropriation of Gratuities, N.Y. Lab. L. § 196-d)

234.   Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

235.   New York Labor Law § 193(1) prohibits employers from making any deductions from an employee's wages except for those permitted by law.

236.   New York Labor Law § 196-d prohibits any employer or his agents, including managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity of any charge purported to be a gratuity for an employee.

237.   At all times relevant, defendants demanded or accepted, directly or indirectly, or retained a portion of gratuities belonging to plaintiffs.

238.   At all times relevant, defendants have been agents or officers of a corporation within the meaning of NYLL, Article 6, § 196-d and the supporting New York State Department of Labor regulations.

239.   By defendants' knowing or intentional demand for, acceptance of, and/or retention of the gratuities paid by customers, defendants have willfully violated NYLL, Article 6 § 196-d and the supporting New York State Department of Labor Regulations.

240.   As a result of defendants' willful violations of the NYLL, plaintiffs and the tipped employees are entitled to recover from defendants their misappropriated gratuities, reasonable attorneys' fees, liquidated damages and pre-judgment and post-judgment interest.

## EIGHTH CLAIM
### (New York Labor Law – Unlawful Deductions from Wages)

241.   Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

242.   Defendants maintained a policy and practice whereby they took unlawful deductions from plaintiffs and the tipped employees' wages for customer walkouts.

243.   The deductions made were not authorized in writing by plaintiffs and the tipped employees and were not for the benefit of plaintiffs and the tipped employees.

244.   Throughout their knowing or intentional efforts to permit unauthorized deductions by separate transaction or directly from the wages of plaintiffs and the tipped employees, defendants have willfully violated NYLL, Article 6, § 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

245.   Due to defendants' willful violations of the NYLL, plaintiffs and the tipped employees are entitled to recovery from defendants the costs of maintaining their uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs individually and behalf of the FLSA Collective and New York Rule 23 Class respectfully request that this Court enter a judgment:

a.   authorizing the issuance of notice at the earliest possible time to all non-exempt employees who are presently working at, or who have worked at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, at Wahlburgers in Coney Island.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

b.   certifying this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.      designating plaintiffs as representatives of the New York Rule 23 Class and counsel of record as Class Counsel;

d.      declaring that defendants have violated the minimum wage and overtime provisions and tip pool provisions of the FLSA and the NYLL and supporting New York State Department of Labor Regulations;

e.      declaring that defendants violated the notice provisions of the NYLL and the Wage Theft Prevention Act;

f.      declaring that defendants violated the spread-of-hours pay provisions of the NYLL and the New York State Department of Labor Regulations;

g.      declaring that defendants unlawfully retained plaintiffs' gratuities in violations of the NYLL;

h.      enjoining future violations of the FLSA and NYLL by defendants;

i.      declaring that defendants' violations of the FLSA and NYLL were willful;

j.      awarding plaintiffs, the FLSA Collective and New York Rule 23 Class unpaid minimum wages;

k.      awarding plaintiffs, the FLSA Collective and New York Rule 23 Class unpaid overtime wages;

l.      awarding plaintiffs, the FLSA Collective and New York Rule 23 Class damages for tips which were unlawfully retained;

m.      awarding plaintiffs and New York Rule 23 Class damages for unpaid spread-of-hours compensation;

n.      awarding plaintiffs, the FLSA Collective and New York Rule 23 Class damages for unlawful wage deductions;

       o.      awarding plaintiffs, the FLSA Collective and New York Rule 23 Class liquidated damages as a result of defendants' failure to furnish wage statements and a notice at the time of hiring pursuant to the NYLL;

       p.      awarding plaintiffs liquidated damages in an amount equal to the total amount of the wages found to be due, pursuant to the FLSA;

       q.      awarding plaintiffs liquidated damages in an amount equal to the total amount of the wages found to be due, pursuant to the NYLL;

       r.      awarding plaintiffs, the FLSA Collective and New York Rule 23 Class pre-judgment and post-judgment interest under the FLSA and the NYLL;

       s.      awarding plaintiffs, the FLSA Collective and New York Rule 23 Class reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

34

t.       awarding such other and further relief as the Court deems just and

proper.

Dated: New York, New York
       August 18, 2016

LAW OFFICES OF MITCHELL SCHLEY, LLC

By:
   Mitchell Schley
   245 Park Avenue, 39ᵗʰ Fl.
   New York, New York 10167
   (212) 672-1848
   mschley@schleylaw.com

PECHMAN LAW GROUP PLLC

By:
   Louis Pechman
   Vivianna Morales
   488 Madison Avenue, 11ᵗʰ Fl.
   New York, New York 10022
   (212) 583-9500
   pechman@pechmanlaw.com
   morales@pechmanlaw.com

*Attorneys for Plaintiffs*