RYAN SESTACK
RSESTACK@GRSM.COM



ATTORNEYS AT LAW
ONE BATTERY PARK PLAZA
28TH FLOOR
NEW YORK, NY 10004
PHONE: (212) 269-5500
FAX: (212) 269-5505
WWW.GRSM.COM

June 5, 2018

**VIA ECF**

Magistrate Judge Cheryl L. Pollak
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Burnett, et al. v. Wahlburgers Franchising LLC, et al.*
              Case No.: 1:16-cv-04602 (WFK)(CLP)

Dear Judge Pollak:

      This letter is submitted on behalf of Wahlburgers Franchising LLC ("Wahlburgers") in reply to plaintiffs' response, dated May 31, 2018 (Dk. 44).[1] Plaintiffs' response is absurd, utterly baseless, and internally contradictory. Plaintiffs' notice to take the deposition of Paul Wahlberg ("Mr. Wahlberg") should be quashed and a protective order issued.

      Plaintiffs worked at a franchised restaurant in Coney Island and are bringing claims for wage and hour violations. Dk. 1, pp. 26-32. In reply, they claim Mr. Wahlberg is in a "perfect position to provide testimony on the operations of Defendant, and its relationship to the franchisee defendant." Dk. 44, p. 1. Mr. Wahlberg is the Executive Chef, co-founder, and an owner of Wahlburgers. He is, as plaintiffs note, the "visionary and creator of the Wahlburgers franchise." Dk. 44, p. 1. He does not work in Operations and is thus not in a "perfect position," or the most knowledgeable position, to testify about operations. Someone within Wahlburgers' Franchising's Operations group, however, would be. In their response, plaintiffs simply assert, without any citation or foundation, that Mr. Wahlberg "was actively involved the operations of franchisee Wahlburgers locations, as well as the training of franchisee employees." *Id*. p. 5. Earlier in their response, plaintiffs note that Mr. Wahlberg was *copied* on an email sent to John Rogan, Director of Operations. *Id*. p. 3. Rogan actually responded to the email, and Norm MacLennan, the V.P. of Operations/COO, is also copied later in that email chain. Dk. 44-1 p. 21. Yet plaintiffs do not seek the deposition of Rogan or MacLennan. Moreover, Mr. Wahlberg, as Executive Chef, co-founder, and owner, does not handle franchisor-franchisee relations, so he is in no position to testify about it. A 30(b)(6) witness, such as Patrick Renna, or an employee in

---

[1] Plaintiffs' response of 7 pages exceeds the 3-page limit set in Local Rule 37.3(c) of the Local Rules of the Eastern District of New York. The last 4 pages of plaintiffs' response should accordingly be disregarded.

Operations is, however, in the proper position.[2] Plaintiffs irrelevantly reference that Mr. Wahlberg's face "is on the walls," that his name is on the menu, and that he has a special sauce and a signature burger. *Id.* They similarly reference the credo of Wahlburgers (namely "What would Paul do?"), which is its general approach to customer service. *Id*. p. 2. The credo is an overall exemplar and guide for corporate culture. None of this has anything to do with operations, with franchisor-franchisee relations, or with plaintiffs' allegations of wage-and-hour violations at a franchised location owned and operated by codefendant Coney Burger. Given the above, plaintiffs evidently intend to harass Mr. Wahlberg, perhaps in an ill-conceived attempt to gain leverage in settlement negotiations.

This is substantiated by plaintiffs' comical references to the reality television series and an article in Boston Magazine, as if these external sources offer accurate information on Wahlburgers' operations, franchisor-franchisee relations, or the employment practices of Coney Burger at its franchised location. Plaintiffs quote Mr. Wahlberg from the reality TV series as saying, with respect to the first Wahlburgers location, that he is "the one that it falls on to make sure that everything is running smoothly." *Id*. p. 2. Nonetheless, the first Wahlburgers restaurant is in Hingham, Massachusetts, and it is not run by a franchisee. It has always been run by Wahlburgers itself as a company-owned location. Given that the establishment in Hingham was the first Wahlburgers restaurant opened, Mr. Walberg, a co-founder, was closely involved to ensure smooth operation and success. Nonetheless, as explained below, the role Mr. Wahlberg played for the Hingham location is not the role he plays for franchised locations. Additionally, Wahlburgers did not and does not control production or content of the reality TV show. Instead, it is produced and controlled by A&E Networks. Mr. Wahlberg's comment about, and role regarding, the Hingham restaurant during the reality show is therefore irrelevant to plaintiffs' wage-and-hour allegations in the present matter. According to plaintiffs, "the focus" of Mr. Wahlberg's deposition will be "Wahlburgers corporate business model, as well as the model's implementation at the Coney Island Wahlburgers location." *Id*. p. 5. The corporate business model of Wahlburgers is also irrelevant to this case. What is relevant are the payroll practices of the franchisee, and whether Wahlburgers exercised control over those practices and over the workers at Coney Island. It is irrelevant whether the franchisee followed Wahlburgers' corporate business model in implementing the proper policy concerning interaction with patrons, preparation and service of food, or adoption of Wahlburgers' corporate culture. Neither is the relevant inquiry, contrary to plaintiffs' response, the "degree to which the Franchisor exerts control over the franchisee defendant [sic]." Dk. 44, p. 4.[3]

Plaintiffs admit that Mr. Wahlberg is the founder and an owner of Wahlburgers, yet inconsistently argue that he is not an apex witness. As plaintiffs acknowledge, the request to depose "a high-ranking corporate … official" warrants "special scrutiny." *Chevron Corp. v. Donzinger*, 2013 U.S. Dist. LEXIS 65335, *6 (S.D.N.Y. May 7, 2013). In the Second Circuit,

---

[2] As noted in Wahlburgers' initial letter, the deposition of Mr. Renna, Wahlburgers' 30(b)(6) witness, was scheduled for March 20, 2018, which plaintiffs have since seemingly abandoned after learning of Wahlburgers' settlement position. Dk. 43, p. 2.

[3] *Olvera v. Bareburger Group LLC*, 73 F. Supp. 3d 201, does not support the proposition for which plaintiffs cite it. Instead, *Olvera*, like other case law on joint employment, states that the relevant inquiry is whether the alleged employer formally or functionally controls workers. *Olvera*, 73 F. Supp. 3d at 205-206. Moreover, *Olvera* involved a motion to dismiss, in which the court held that the allegations were legally sufficient to state a claim. *Id*. at 203. The court did not, contrary to the explanatory parenthetical in plaintiffs' response, identify as a relevant factor the "degree to which franchisor enforced requirements upon the franchise operation and specified procedures for employees to follow." Dk. 44, p. 5. Rather, the court mentioned that those were two of the seven main allegations in the complaint. *Olvera*, 73 F. Supp. 3d at 207.

"Apex Depositions are disfavored" "unless [the executives]" to be deposed "have personal knowledge of relevant facts of some unique knowledge that is relevant to the action." *Alliance Industries, Inc. v. Longyear Holding, Inc.*, 2010 U.S. Dist. LEXIS 119973, *11 (W.D.N.Y. March 10, 2010). As indicated above, and as could be further explained and supported in a motion, Mr. Wahlberg has no unique knowledge of facts relevant to the instant case. Plaintiffs' response itself shows as much. As mentioned above, Mr. Wahlberg's role has evolved since the opening of the first restaurant in Hingham. Wahlburgers has expanded from that first restaurant to a current total of 27 restaurants around the country. Mr. Wahlberg does not supervise or get involved in day-to-day affairs or operations in the Hingham restaurant, never mind at franchised locations, including the Coney Island restaurant. Instead, as Executive Chef, he is responsible for the culinary aspect of Wahlburgers, which entails developing and modifying recipes, the concept and design of the menu, and items offered on the menu, including seasonal fare. His focus is on food, making it better and its preparation faster, and on maintaining and improving overall quality. Additionally, Mr. Wahlberg was recently involved in the development of "Wahlburgers at Home," a new retail line offering products in grocery stores. He was also involved with Impossible Foods in the testing and development of a meatless burger called the Impossible Burger. Mr. Wahlberg could informally be called the "chief culinary officer" of the company. If he visits a franchised location, it is usually for a promotional event. In short, Mr. Wahlberg develops and promotes the Wahlburgers brand. He has no involvement with, and thus no knowledge of, workers and pay practices at franchised restaurants, including the Coney Island location.

Finally, plaintiffs' argument about prematurity is baseless. It is appropriate to move to quash a notice of deposition. *See e.g.*, *United States SEC v. Ahmed*, 2017 U.S. Dist. LEXIS 54030, *8 (D. Conn. Apr. 7, 2017)(granting motion to quash deposition notice and a motion for protective order); *Abdelgadir Aboeid v. Saudi Arabian Airlines, Inc.*, 2011 U.S. Dist. LEXIS 64757, *9 (E.D.N.Y. June 17, 2011)(granting motion to quash deposition notice and a motion for protective order); *Rafferty v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 118276, *1-2 (E.D.N.Y. Aug. 25, 2014) (noting, on a motion for reconsideration, the granting of a motion to quash a notice of deposition). Additionally, plaintiffs' reliance on *Progress Bulk Carriers v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 939 F. Supp. 2d 422, 430 (S.D.N.Y. 2014), is misplaced, because there, unlike here, the plaintiff "identified a reasonable independent basis for deposing each of [the] individuals." *Progress Bulk*, 939 F. Supp. 2d at 430. The same applies to plaintiffs' misplaced reliance on *Schindler Elevator Corp. v. Otis Elevator Co.*, 2007 U.S. Dist. LEXIS 44200 (S.D.N.Y. June 18, 2007), which involved the deposition testimony of the "inventor of the patent at issue in [the] litigation." *Schindler Elevator Corp.*, 2007 U.S. Dist. LEXIS at *3. Moreover, Rule 26(c) allows a court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). An order of protection is particularly appropriate here, given plaintiffs' evident aim to annoy and harass Mr. Wahlberg, a co-founder, the Executive Chef, and someone at the apex of the company, with no familiarity of or involvement with pay practices or workers at franchised restaurants, and thus no unique knowledge relevant to this action.

                                                               Respectfully submitted,

                                                                */s/ Ryan Sestack*
                                                                Ryan Sestack

cc:       All Counsel of Record (*via* ECF only)

93v.1