# PECHMAN LAW GROUP PLLC
## ATTORNEYS AT LAW

488 MADISON AVENUE
NEW YORK, NEW YORK 10022
(212) 583-9500
WWW.PECHMANLAW.COM

April 30, 2019

Honorable William F. Kuntz
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:    *Burnett, et al. v. Wahlburgers Franchising LLC, et al.*
               16 Civ. 04602 (WFK)(CLP)

Dear Judge Kuntz:

      This letter is submitted in opposition to Defendant Wahlburgers Franchising LLC's ("Defendant" or "Wahlburgers") letter requesting a pre-motion conference regarding their anticipated Fed. R. Civ. P. Rule 56 motion (the "Motion", ECF No. 70). Genuine issues of material fact exist pertaining to the ultimate question of whether Wahlburgers exercised sufficient control to be deemed a joint employer of Plaintiffs liable for their unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Accordingly, the parties should avoid unnecessary and costly motion practice and proceed to trial.

      The FLSA's definition of employment is "the broadest definition that has ever been included in any one act." *U.S. v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) ("striking breadth"); *see also Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (interpretation must be liberal in light of FLSA's remedial and humanitarian purposes). The Second Circuit has held that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). "The statutory standard for employer status under the NYLL is nearly identical to that of the FLSA." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013) (citing 29 U.S.C. § 203(d); N.Y. Lab. Law § 190(3)). Applying this framework to the undisputed facts makes clear that Wahlburgers was Plaintiffs' employer for FLSA and NYLL purposes.

      Wahlburgers' motto is "our family, our story, our burgers," and asks franchisee workers to "join the family" in their employee manuals, but when it comes time to pay for the unlawful practices of the franchisee, Defendant intends to evade liability.

Honorable William F. Kuntz
April 30, 2019
Page 2 of 3

Although Defendant barely discusses any of the facts regarding its relationship with the Coney Island franchisee ("CI Restaurant") in its letter, there are significant facts in dispute that set this case apart from similar joint employer disputes. The record suggests that there are disputes regarding whether: (1) Wahlburgers trained non-managerial employees of the CI Restaurant at its corporate headquarters regarding their work at CI Restaurant; (2) Wahlburgers officers, including the Executive Chef, co-founder, and owner Paul Wahlberg, supervised and directed Plaintiffs at the CI Restaurant; (3) CI supervisors were hired and trained by Wahlburgers; (4) and whether Wahlburgers maintained time records pertaining to Plaintiffs.

These facts, viewed in the light most favorable to Plaintiffs, in addition to other record evidence, would demonstrate Wahlburgers' extensive functional and operational control over the economic reality of the franchisee employees' daily lives.

Wahlburgers' employment manuals govern how Plaintiffs work: it is the final word on nearly every aspect of store operations, directing not only how to cook the food, but the chain of communication of the kitchen; guest relations; how to accept payment, issue refunds, organize and count the till, and how to read ticket times. The manual's checklists are specific to each position in the restaurant, and itemize the to-do list for the store, mandating to extreme detail what must be done, how, and when.  For example, the manual's checklist for a manager specifies that at 10:45 a.m. managers should discuss features and any special events with servers and bartenders.  Wahlburgers directed the franchisee on the use of supplies, equipment, items to be stocked and sold, vendors and suppliers, and maintenance, as well as how to decorate, display and organize the store.  Wahlburgers required the franchisee to use specific programs and software for point-of-sales, and send daily reports of labor hours and sales.  Wahlburgers also provided the franchisee with a scheduling "matrix," prepared employees' weekly schedules and weighed in on issues such as vendor non-payment, complaints from customers of the franchisee, and how to deal with service animals in the restaurant.  Additionally, some supplies used by the Plaintiffs, such as buns, were stored by Wahlburgers at their other restaurants.  Through its detailed instructions, Wahlburgers controlled and choreographed the work Plaintiffs performed.

Wahlburgers' control was enforced by its "franchisee operations managers," corporate executives and representatives, who regularly audited and inspected the CI Restaurant, and made detailed, explicit, and wide-ranging directives, which the franchisee were obligated to follow in all respects. Corporate executives and representatives issued similar directives on nearly every aspect of store operations and demanded compliance, ranging from which merchandise to wear, how to greet customers, and the style of uniform the employees wore. Paul Wahlberg frequented the CI Restaurant and directly supervised Plaintiffs and other workers, criticizing their speed in accomplishing tasks and in the way they prepared food, complaints that Wahlberg later communicated to CI Restaurant managers.

      Wahlburgers also exercised control over human resource matters by issuing an employee handbook; job descriptions for each position listing the "FLSA Status" for each position and "job elements essential for making compensation decisions"; providing "steps of service" rules; providing new hire packets; requiring minimum requirements and physical requirements for each position; setting forth procedures for disciplining employees for violations of the Wahlburgers' employee handbook, such as tardiness, no show, or poor cash handling; retaining the right to inspect franchise records; and training franchise workers. For example, plaintiff Henry Foster worked as cook at the franchisee and later as a server after receiving training at Wahlburgers' corporate offices. In addition to Foster, CI Restaurant managers Tasneem Tahir and Ben Niass participated in trainings by corporate, and in the months before the opening of the franchisee, several corporate representatives were present in the restaurant to train the employees and prepare the restaurant for its opening. The Franchise Agreement also dictates the staffing of the restaurant, for example, that the restaurant must have a minimum of three managers.

      Wahlburgers was involved in the recruitment and hiring of employees at Wahlburgers in the CI Restaurant including for example, supervisor Sarah Henry. Henry, who was trained at Wahlburgers, was sent to work as one of the first supervisors at the CI Restaurant. As a supervisor, she was responsible for day-to-day supervision of employees, including conducting orientation, training and making weekly schedules. Indeed, the management of the franchisee was intermingled with the corporate management, for example positions were offered to Foster and Tas to work directly at corporate, and Ben Niass was a "regional manager," and regularly traveled between Coney Island and Wahlburgers' corporate headquarters in Massachusetts and was responsible for opening new Wahlburgers restaurants with the corporate trainers.

      In view of the foregoing, Defendant's motion only stands to delay the inevitable because it would raise genuine issues of material fact that cannot be resolved at this stage. Defendant should not be permitted to burden this Court with a meritless motion.

                                            Respectfully submitted,

                                            Louis Pechman

cc: Counsel for Defendants (via ECF)